UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Deborah Hutchinson,

    Plaintiff,

v.

Stride Rite Children's Group, Inc., et al.,

    Defendants.

CASE NO. 1:05cv738

Judge Michael R. Barrett

## ORDER

This matter is before the Court pursuant to Defendants' motion for summary judgment (Doc. 24). Plaintiff filed a memorandum in opposition (Doc. 33) to which Defendant replied (Doc. 41). This matter is ripe for review.

Facts

Plaintiff began selling Defendants' product in 1980 while she worked for an independent retailer[1]. Then in 1994 the Stride Rite Corporation purchased the independent retailer where she worked and Plaintiff then became a Stride Rite employee. (Hutchinson Dep. at 12-13). Plaintiff was, at all times relevant, a Store Manager. Store Managers are responsible for hiring, recruiting, training, customer service and daily operation. (Hall Dep. at 61).

StrideRite stores are focused on the selling of children's shoes. Thus, Defendants directed their marketing efforts at educated mothers with children younger

---

[1] This independent retailer was "Jay's Stride Rite" which later became "Joel's Stride Rite."

than seven years old.  (Hall Dep. at 56).  Hall admits that most moms with younger children are younger than 40 years old.  (Hall Dep. at 56-57).

It is undisputed that throughout her career, Plaintiff always received outstanding reviews, and always earned merit-based raises.  (Hall Dep. at 70-71;Hutchinson Dep. at 155).  Hutchinson had never been told that anyone was not satisfied with her performance.  (Hutchinson Dep. at 155-156).

Janet Hall was the District Manager at the times relevant to the issues in this case.  District Managers are responsible for store operations and have ultimate responsibility for each store in their assigned territory. (Hall Dep. at 46-47).  District Managers sometimes make termination recommendations to Defendants' Human Resources ("HR") Department.  (Id. at 50).  At times, HR requests these recommendations from District Managers.  (Id. at 51-53).

Ms. Hall made comments to Plaintiff that she found to be inappropriate.  Hall stated that Hutchinson only saw things in "black and white" and was "old school" in her management style.  (Hall Dep. at 104-105, 108; Hutchinson Dep. at 51-52, 56).  Hall also attempted to steer Plaintiff away from emulating Mike Smith, a store manager with 25 years experience, also known as Roderick Smith, because he was "old school" or "set in his ways".  (Hall Dep. at 108; Hutchinson Dep. at 27-28).  Hall opined that Plaintiff was inflexible and lacked creativity.  (Hall Dep. at 104-105).  Hall openly criticized Hutchinson, comparing her management style to Smith's, and would not listen to Hutchinson's protests that Hutchinson was, in fact, open to change.  (Hutchinson Dep. 51-52, 54, 56).

Hall has conversations with Hutchinson about dying her gray hair. (Hall Dep. at 59). Hall also perceived that Hutchinson often put forth less effort than managers. (Id. at 63-64). Hall expressed reservations about hiring an applicant as a Store Manager because the woman had wrinkles around her mouth. (Hutchinson Dep. at 28-29, 33). Hall mentioned to Hutchinson that she "couldn't stand the way old people looked at her over their glasses." (Id. at 28). Hall also repeatedly joked to Hutchinson that two managers at an outlet store would make a good couple because they were both old and slow. (Id. at 34-38).

Defendants' upper management suggested, through the District Managers, that Store Managers read "Who Moved My Cheese?" (Hall Dep. at 100-101). That book encourages readers to "think outside the box" and look to the future and new ideas. (Id. at 102-103). Hall described the book as discouraging readers from doing things a certain way only because they have always done that way. (Id. at 102).

Effective March 23, 2003, Defendants instituted a policy requiring store management to conduct follow-up contact on cash refunds given the day before to ensure the absence of fraud on those refunds. (Hutchinson Dep. at 76, 79, 83, 106-107; Hutchinson Dep. Ex. 2). Following this policy, Hutchinson delegated this task to Michelle Adkins and Michelle Schneider, her Assistant Managers, on days she did not open the store. (Hall Dep. at 210; Hutchinson Dep. at 83, 86, 181). The parties dispute whether or not Hall knew this delegation had occurred.

The Policy specifically states:

Store Manager's are responsible for signing off on ALL return/exchange transactions daily by reviewing and signing the daily return/exchange log.

> If the Store Manager is not present during the return transaction, then he/she must review the return/exchange log each morning.
>
> All cash refunds require a follow up phone call from the Store Management team. Cash refunds transacted by the Store Manager will have the Assistant Manager call the customer. Cash refunds transacted by the Assistant Manager/Full time/Part time associates will have the store Manager call the customer.
>
> ...
>
> It is the responsibility of the Store Manager to follow up and ensure associate compliance. Violation of this policy by an store associate will result in termination.

Michelle Adkins was the Assistant Manager at Plaintiff's store and had worked with Plaintiff for approximately eight years. (Hutchinson Dep. at 21-22). In October 2004, Hall began conducting a store audit and told Hutchinson that something "looked funny" regarding the return and exchange logs. (Hall Dep. at 154; Hutchinson Dep. at 90, 92, 114). In response, Hutchinson urged her to call Defendants' loss prevention company, LPI, to investigate the matter. (Hutchinson Dep. at 90-91, 93, 95). Instead of contacting LPI, Hall instructed Hutchinson to print all the return/exchange receipts for September 2004 and told her she would return to review them with Hutchinson. (Hall Dep. at 153-154; Hutchinson Dep. at 98).

Hall did not finish the audit, or review the suspicious documents that day. (Hall Dep. at 153-154, 180-182). After Hall left, Hutchinson conducted several follow-up calls to customers and determined that there was no reason to believe there had been fraudulent returns. (Hutchinson Dep. at 100, 121; Hall Dep. at 163-164). Hutchinson then left for vacation. When Hall returned, she was accompanied by Mark Reagan of LPI. (Hutchinson Dep. at 117). Reagan interviewed Hutchinson that day and accused her of possessing knowledge about theft from her store. (Id. at 122, 123). Hutchinson

4

denied any knowledge. (Id. at 122). Reagan also interviewed Adkins, Schneider and other employees. (Id. at 124). After those meetings, Reagan told Hutchinson and Hall that Adkins had confessed to the theft. (Id. at 125-126).

Hall admitted that there was no reason that Hutchinson should have foreseen that Adkins would have committed this theft. (Hall Dep. at 152). Hall terminated Adkins' employment on the day of the investigation. (Hutchinson Dep. at 133-134). Neither Hall nor Reagan had any suspicion that Hutchinson aided Adkins in her theft or had any knowledge of Adkins' scheme. (Hall Dep. at 172). Nevertheless, only three days later, without any further conversations, Hall informed Hutchinson that she was terminated. (Hutchinson Dep. at 137).

Pam Bittman, Director of Store Operations, participated in the decision to terminate Hutchinson. (Bittman Dep. at 5, 8). When she made her decision to terminate Hutchinson, Bittman did not have a copy of the LPI report and had only had a five minute conversation with Hall about the situation. (Id. at 19-20). She and Denise Lockaby, Director of Professional Development, consulted for less than thirty minutes before allegedly making the termination decision together. (Id. at 31). Neither Lockably nor Bittman spoke with Hutchinson about the events. (Id. at 22-23, 47-48; Lockaby Dep. at 18). Also, neither Bittman nor Lockaby knew whether this policy allowed assistant managers to conduct follow up phone calls as happened in this case. (Lockaby Dep. at 66; Bittman Dep. at 25).

Although Defendants normally provide written verbal and written warnings, in the form of a Performance Improvement Plan ("PIP"), to employees with performance

5

problems before termination, Defendants' policy does provide for immediate termination for some offenses. (Lockaby Dep. at 11-12, 14-16; Hall Dep at 72-75).

Additionally, Plaintiff alleges that two other significantly younger store managers failed to discover thefts but were not terminated for this failure. (Hutchinson Dep. at 142-148). Peter Krause, in his late 20's, was a Store Manager in a store where a sales associate was found to be stealing from the company. The theft in Krause's store occurred both before and after the implementation of this new return policy. (Doc. 33, Ex. A). However, Defendants point out that it is was Krause who discovered the theft and reported it. Interestingly, in a performance review in January, 2005, after the theft in his store had been reported and after Plaintiff was terminated, Hall noted on the review that "not all cash refunds are contacted and missing receipts on media." (Hall Dep. 227). Instead of terminating Krause, Defendants did not give him a raise and he was put on a 90 action plan for doing the same thing that Plaintiff was terminated for doing. (Hall Dep. at 229, 240).

Additionally, an employee stole money several times from the nightly deposits from the store in Somerset, Michigan where Melissa Nord, who was in her late 20's, was Store Manager. (Hall Dep. at 140-141). According to the written warning in Nord's personnel file, Nord's inability to account for several deposits worth hundreds of dollars and deposits left in an unlocked filing cabinet for up to ten days was unacceptable and a violation of policy 3-009. (Doc. 33, Ex. D). Violations of policy of 3-009 may subject employees to immediate termination. (Hall Dep. Ex. 1). According to the write-up, Nord violated security and exhibited poor judgment and disregard of an established rule. (Doc. 33, Ex. D). Nord was not terminated for these violations. (Hall Dep. at 140-143).

Plaintiff also alleges that Hall drove Mike Smith to quit his job. (Hutchinson Dep. at 27-28). In fact, Hall's treatment of Smith prompted him to write to Defendants' President complaining of Hall's age-based harassment and causing his resignation. (Hutchinson Dep. at 27-28; Lockaby Dep. at 44-45, Doc. 27-2, p6). Lockaby, contacted Hall to discuss Smith's performance after he resigned, but never informed Hall of his serious complaints of age discrimination or questioned her about her management of Smith. (Lockaby Dep. at 47).

Plaintiff was fifty years old at the time of her termination. Defendants replaced Hutchinson with a significantly younger male who was much less qualified than Hutchinson. (Hutchinson Dep. at 69; Hall Dep. at 218). John Raymond, who was in his 30's and had only about four years experience managing a toy store, replaced Hutchinson. (Hall Dep. at 218). Hall, Brittman and Lockeby are all females who are in their forties.

Plaintiff brings claims of Federal and state age discrimination, Federal and State gender discrimination and a violation of Ohio Public Policy. However, Plaintiff does not oppose summary judgment on her Ohio Public Policy claim. (Doc. 33, FN1).

Legal Analysis

I. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita*

7

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-250. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes v. Runyon*, 912 F.Supp.280, 283 (S.D.Ohio 1995)(Spiegel, J.). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes*, 912 F.Supp. at 283. The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

II. Discrimination

The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Title VII makes it unlawful for an employer "to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Likewise, this Court may rely on cases interpreting the ADEA in its analysis of Plaintiff's state law claim. *Williams v. General Elec. Co.*, 269 F.Supp.2d 958, 966 (S.D. Ohio 2003), *citing*, *City of Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998); *Cochran v. Columbia Gas of Ohio, Inc.*, 742 N.E.2d 734, 738 (Ohio 2000). Thus, the state claims survive or fall with the Federal claims.

In a case alleging employment discrimination, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing*, *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir.1997).

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.2003) (explaining that direct evidence of discrimination does not require the fact finder to draw any inferences in order to conclude that challenged employment action

9

was motivated at least in part by prejudice against members of the protected group). Examples of direct evidence are a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), *citing*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir.1993).

A claim of employment discrimination is to be analyzed using the burden-shifting approach in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) when there is no direct evidence of discrimination.  To establish a *prima facie* case of discrimination for age and/or gender, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004); *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

Defendants, for purposes of the pending motion, do not contest that Plaintiff can establish a *prima facie* case of age and gender discrimination. (Doc. 24, FN 8).  Thus, an inference of discrimination arises, and the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).

Defendants argue that the reason Plaintiff was terminated was, in fact, a legitimate, nondiscriminatory reason.  Defendants terminated Plaintiff for a violation of

company policy. (Hall Dep., Ex. 12). In essence, Plaintiff failed to make follow up phone calls on cash returns in violation of company policy resulting in an assistant manager stealing money from the company. Defendants further states that Plaintiff's termination was required by the policy wherein it states that "It is the responsibility of the Store Manager to follow up and ensure associate compliance. Violation of this policy by an store associate will result in termination." See Doc. 24, Ex. D, Policy 1-036. The Court finds that Defendants have adequately established a legitimate, nondiscriminatory reason.

Thus, Plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him or her remains at all times with the plaintiff. *Texas Dep't of Cmty, Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Unsupported speculation cannot form the basis for demonstrating pretext. *See Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Plaintiff has failed to show any pretext for gender discrimination. The District Manager and two individuals in the Human Resources department who were involved in the decision to terminate Plaintiff were all female. Although, it is true that Plaintiff was replaced by a male there is no evidence of gender discrimination and this fact alone is insufficient to survive the motion for summary judgment.

As to Plaintiff's claims of age discrimination, the Court finds that a question of fact exists as to whether or not age played a role in Defendants' decision to terminate Plaintiff and whether the proffered reason was insufficient to motivate her termination. "They key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cty. Sch. Bd.,* 484 F.3d 357, 365 (6th Cir. 2007). Hall made age related comments to Plaintiff.[2] Plaintiff has set forth examples of other employees who violated company policy and were not terminated. Defendants counter that those employees violated sections of the policy where termination was permissible but not mandated. However, the court notes that the policy itself says that "store associates" will be terminated for a violation of the return policy, not "Store Managers." Further, Krause was not terminated when it was documented that he too was not placing follow phone calls on cash returns. This is sufficient to create a genuine issue of material fact.

---

[2] This does not constitute direct evidence of age discrimination as a inference has to be made to connect the statements to Plaintiff's termination. *See Blair v. Henry Filters, Inc.,* 2007 U.S. App. LEXIS 24091, *14 (6th Cir. 2007).

Additionally, Defendants adamantly argue that even if Ms. Hall had made age based discriminatory comments to Plaintiff that Ms. Hall had no input on the decision to terminate Plaintiff. Defendants argue that this decision was made by two individuals from HR, Bittman and Lockaby, who after speaking with Hall for five minutes, had a thirty minute conversation before deciding to terminate Plaintiff. There is a question of fact that exists as this argument and testimony, via depositions and affidavits, conflicts with the record. The Employee Master File Maintenance form (Doc. 39-3, p6) indicates that Ms. Hall both prepared and approved the termination. It is not for the court to determine credibility in a motion for summary judgment. This is for a jury to determine. *See Anderson*, 477 U.S. at 249-250.

Conclusion

Summary Judgment is GRANTED as to Counts III, IV and V. Summary Judgment is DENIED as to Counts I and II.

**IT IS SO ORDERED.**

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court

13